```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MARYLAND

LANCE MCCOY                         *

          Plaintiff        *

     vs.                   *    CIVIL ACTION NO. MJG-13-3744

AMATEUR ATHLETIC UNION              *
   OF THE UNITED STATES, INC.
                                    *
          Defendant
                                    *
*    *    *    *    *    *    *    *    *
```

MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT

The Court has before it Defendant Amateur Athletic Union of the United States, Inc.'s ("AAU") Motion for Summary Judgment [Document 70] and the materials submitted relating thereto.  The Court finds a hearing unnecessary.

I.   BACKGROUND

  A.   Factual Background

The AAU is a non-profit organization incorporated in New York with its principal place of business in Florida.  [Document 1].  It "is one of the largest, non-profit, volunteer, sports organizations in the United States . . . . dedicated exclusively to the promotion and development of amateur sports and physical fitness programs."  [Document 76-1] at 1.[1]

---

[1]   The AAU objects to McCoy's reliance on Document 76-1, which appears to be a list of "FAQs" taken from the AAU's website.

The Freddie Hendricks Track Club ("FHTC"), based in Baltimore, Maryland, participated in and hosted AAU track and field events during the relevant times at issue. See [Document 76-5].[1]

In 2007, Plaintiff Lance McCoy ("McCoy") participated as an athlete with the FHTC. Bryant Newmuis ("Newmuis") was a coach for the FHTC. As a coach, Newmuis "stretch[ed] athletes out, help[ed] them with their workouts, and dr[o]ve students to and from practice." [Document 70-19] at 14 (Plaintiff's Answers to Interrogatories).

In June or July 2007, Newmuis transported McCoy to his (Newmuis') house to rest before track practice. McCoy informed Newmuis that he was experiencing pain in his leg. According to McCoy, Newmuis provided McCoy with "ice for [his] leg and then began to massage and molest [him]." Id. Newmuis also sexually assaulted McCoy on other occasions. Am. Compl. ¶ 20.

---

[1] The AAU contends that "Plaintiff has not authenticated this document pursuant to Fed. R. Evid. 901, has not provided a Uniform Resource Locator (URL) for the web site, and has not stated when it was printed." [Document 77] at 3. On January 8, 2015, using the URL http://aausports.org/FAQs, the Court located the AAU web site page that is attached as Document 76-1. Thus, the Court will take judicial notice of the information. See Jeandron v. Bd. of Regents of Univ. Sys. of Maryland, 510 F. App'x 223, 227 (4th Cir. 2013) ("A court may take judicial notice of information publicly announced on a party's web site, so long as the web site's authenticity is not in dispute and 'it is capable of accurate and ready determination.'" (quoting Fed. R. Evid. 201(b))).

On October 30, 2008, Newmuis was convicted of "Sex Abuse Minor" in the Circuit Court for Baltimore County, Maryland, Case No. 03-K-07-004610."[2]

B. Procedural Posture

1. 2010 Lawsuit

In May 2010, McCoy filed a lawsuit against Newmuis and the FHTC in the Circuit Court for Baltimore City, asserting claims of assault, battery, false imprisonment, and intentional infliction of emotional distress, Case No. 24-C-10-004109. [Document 70-3]. Liability was determined against Newmuis and, by default, against the FHTC[3] on liability. The case proceeded to a jury trial on damages.

In October 2011, the jury awarded damages to McCoy of $1,800,000.00 against Newmuis and $600,000.00 against the FHTC. [Documents 70-4, 70-5]. The circuit court, however, granted

---

[2]  See http://casesearch.courts.state.md.us/inquiry/inquiryDetail.jis?caseId=03K07004610&loc=55&detailLoc=K.  The Court takes judicial notice of Newmuis' criminal conviction. See Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that '[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.' (alteration in original)); Drubetskoy v. Wells Fargo Bank, N.A., No. CIV. CCB-13-2196, 2013 WL 6839508, at *2 (D. Md. Dec. 20, 2013) ("A court reviewing a motion to dismiss also may 'properly take judicial notice of matters of public record.' . . . [T]he plea agreement evidencing Drubetskoy's criminal conviction is a matter of public record . . . ." (citations omitted)).
[3]  A default judgment was entered against the FHTC.

3

FHTC's motion to vacate the default judgment and default order entered against it based on defective service.  See [Documents 70-6 to 70-10].  In May 2012, the circuit court dismissed McCoy's complaint against the FHTC based on failure to state a claim.  [Document 70-12].  The judgment against Newmuis remains in effect.

        2.   The Instant Lawsuit

In July 2012, McCoy filed a second complaint – the instant lawsuit - against the FHTC in the Circuit Court for Baltimore City, Case No. 24-C-12-004358, presenting the same claims asserted in the 2010 lawsuit. [Document 2].  McCoy filed an Amended Complaint in April 2013, adding the AAU as a Defendant, and purportedly adding Newmuis as a Defendant.  [Document 15].

In the Amended Complaint, McCoy asserts claims in five Counts:

        Count I:        Respondeat Superior

        Count II:       Assault

        Count III:     Battery

        Count IV:      False Imprisonment

        Count V:       Intentional Infliction of Emotional Distress ("IIED")

On November 19, 2013, the circuit court dismissed all claims against the FHTC.  [Document 50].

Upon dismissal of the FHTC, the AAU removed the case to this Court, asserting diversity jurisdiction. [Document 1]. McCoy filed a Motion to Remand [Document 52] based his having named Newmuis, a Maryland citizen, as a non-diverse defendant The Court denied the motion, stating:

> Although Bryant Newmuis, presumably a Maryland citizen, has been named as a defendant in this case, there is no contention that he was ever served with process in the instant case. Moreover, Plaintiff previously obtained a judgment against Mr. Newmuis based upon the same claims against him as are asserted in the instant case. Accordingly, Mr. Newmuis is not a party defendant whose presence destroys federal diversity jurisdiction.

[Document 59] at 1.

In the Initial Scheduling Order issued on March 7, 2014 [Document 59], the Court stated:

> The parties shall engage in initial discovery relating to Plaintiff's claim that Defendant Amateur Athletic Union of the United States, Inc. is liable for the alleged tortious conduct committed by Bryant Newmuis.

The parties engaged in initial, limited discovery. By the instant Motion, the AAU seeks summary judgment pursuant to Federal Rule of Civil Procedure 56.

5

II.   SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings and supporting documents "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The well-established principles pertinent to summary judgment motions can be distilled to a simple statement:  The Court may look at the evidence presented in regard to a motion for summary judgment through the non-movant's rose-colored glasses, but must view it realistically.  After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322–323 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).

Thus, in order "[t]o defeat a motion for summary judgment, the party opposing the motion must present evidence of specific facts from which the finder of fact could reasonably find for him or her."  Mackey v. Shalala, 43 F. Supp. 2d 559, 564 (D. Md. 1999) (emphasis added).  However, "self-serving, conclusory, and uncorroborated statements are insufficient to create a genuine issue of material fact."  Int'l Waste Indus. Corp. v. Cape

6

Envtl. Mgmt., Inc., 988 F. Supp. 2d 542, 558 n.11 (D. Md. 2013); see also Wadley v. Park at Landmark, LP, 264 F. App'x 279, 281 (4th Cir. 2008).

When evaluating a motion for summary judgment, the Court must bear in mind that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

III. DISCUSSION

    A.    Count I - Respondeat Superior

In Count I, McCoy states: "[a]s Newmuis' employer, FHTC is responsible for all of the acts committed by Newmuis within the scope of his employment." Am. Compl. ¶ 22. Count I does not refer to the AAU. However, it appears that McCoy seeks to hold the AAU vicariously liable – under a respondeat superior theory of liability – for the acts of Newmuis. See, e.g., [Document 76] at 5.

Under Maryland law "there is no separate cause of action for respondent superior." Stewart v. Bierman, 859 F. Supp. 2d 754, 768 & n.8 (D. Md. 2012), aff'd sub nom. Lembach v. Bierman, 528 F. App'x 297 (4th Cir. 2013). Rather, respondeat superior

7

"is a doctrine that imputes liability for a cause of action to a principal." Id. at 768 n.8.

Accordingly, the Court will dismiss Count I as a free standing claim, but will consider Counts II, III, IV, and V to assert a claims against the AAU for Newmuis' acts on a respondeat superior theory..

### B. Newmuis as an Agent of the AAU

In his Response[4] to the instant Motion, McCoy contends that the AAU is liable for the acts of Newmuis because "Newmuis was an agent of the AAU." [Document 76] at 5. However, McCoy has not presented evidence adequate to permit a reasonable jury to find that an agency relationship existed between Newmuis and the AAU.

The United States Court of Appeals for the Fourth Circuit has stated that:

> Under Maryland law, the doctrine of respondeat superior permits "an employer to be held vicariously liable for the tortious conduct of its employee when that employee was acting within the scope of the employment relationship."

---

[4] McCoy's Response is titled "Memorandum of Law in Support of Plaintiff Lance McCoy's Motion for Summary Judgment." [Document 76]. However, in the first paragraph, McCoy states that he "submits this Memorandum of Law in support of his Response in Opposition of [sic] Defendant's Motion For Summary Judgment." Id. at 1 (emphasis added). Accordingly, the Court will treat Document 76 as a Response to the instant Motion and not as a separate motion for summary judgment filed by McCoy.

Forkwar v. Empire Fire & Marine Ins. Co., 487 F. App'x 775, 778 (4th Cir. 2012) (citation omitted).  The doctrine of respondeat superior can also apply to a principle-agent relationship.  Cf. Henkelmann v. Metro. Life Ins. Co., 26 A.2d 418, 423 (Md. 1942) ("Of course, even an ag[en]t may be subject to the control of his principal in respect to some portion of the work to be performed, and under such circumstances the doctrine of respondeat superior can be invoked.  But . . . the doctrine applies in such a case only when the relationship of master and servant existed in respect to the very thing from which the injury arose.").

Under Maryland law:

> An agency relationship is one that arises from the manifestation of the principal to the agent that the agent will act on the principal's behalf.  Although such a relationship is not always contractual in nature, it must be consensual.  Ultimately, a reviewing court must determine that there was an intent to enter into an agency relationship.  That intent may be inferred from conduct, including acquiescence.

Anderson v. Gen. Cas. Ins. Co., 935 A.2d 746, 752 (Md. 2007) (emphasis added).

An agency relationship can be based on actual or apparent authority.  Jackson v. 2109 Brandywine, LLC, 952 A.2d 304, 322 (Md. Ct. Spec. App. 2008) (citation omitted).  Actual authority, which can be expressed or implied, "exists only when 'the

principal knowingly permits the agent to exercise the authority or holds out the agent as possessing it.'" Id. (citation omitted).  Apparent authority exists when "'the words or conduct of the principal cause the third party to believe that the principal consents to or has authorized the conduct of the agent.'" Id. (citation omitted).  "The law is clear, however, that a principal-agent relationship must arise from the conduct of the principal, not the agent." Id. at 323 (emphasis added).

McCoy has not presented any evidence of conduct by the AAU authorizing Newmuis to act as the AAU's agent.  See Jackson, 952 A.2d at 323.  Nor has he presented evidence of a mutual intent between Newmuis and the AAU to enter into an agency relationship.  See Anderson, 935 A.2d at 752.  Instead, McCoy offers only conclusory assertions, without supporting evidence, that an agency relationship existed between Newmuis and the AAU.

McCoy contends that "[a]s a coach under the FHTC, Mr. Newmuis was a member of the AAU." [Document 76] at 4.  However, he provides no evidence to establish that Newmuis complied with the requirements to become a member of the AAU as a coach.  See [Document 76-1] at 2.  For instance, there is no evidence that Newmuis purchased a non-athlete membership or completed the required coaches' education class.  See id.  There is no evidence refuting the Director of Compliance of the AAU's affidavit stating that a search of the AAU's membership records

revealed that Newmuis "has never been a member of the AAU." Lyon Aff. ¶ 4.  Moreover, McCoy provides no support for his contention that – assuming Newmuis was a member of the AAU – the status membership would establish an agency relationship between Newmuis and the AAU.

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [because i]n such a situation, there can be 'no genuine issue as to any material fact.'" Celotex, 477 U.S. at 322-23.  The Court finds that McCoy has not presented sufficient evidence to permit a reasonable jury to find that an agency relationship existed between Newmuis and the AAU.

Accordingly, the AAU is entitled to summary judgment on all claims.


### C.   Vicarious Liability for Sexual Assaults

The Court holds that the AAU is entitled to summary judgment due to the absence of an agency relationship with Newmuis.  Nevertheless, for the benefit of any reviewing court, this Court states that even if there had been such a relationship, it would grant summary judgment due to the absence

11

of proof that Newmuis' tortious actions were within the scope of any agency relationship with the AAU.

An employer – or principal – can be held vicariously liable, under the doctrine of respondeat superior, for the tortious conduct of an employee – or agent – "where it has been shown that the employee was acting within the scope of the employment relationship at that time."  S. Mgmt. Corp. v. Taha, 836 A.2d 627, 638 (Md. 2003).

"An employee's tortious conduct is considered within the scope of employment when the conduct is in furtherance of the business of the employer and is authorized by the employer." Tall v. Bd. of Sch. Comm'rs of Baltimore City, 706 A.2d 659, 667 (Md. Ct. Spec. App. 1998).

The Court of Appeals of Maryland has explained that in determining whether an employee's – or agent's – conduct was within the scope of the employment – or agency – relationship:

> [A]n important factor is whether the employee's conduct was "expectable" or "foreseeable."
>
> Furthermore, and particularly in cases involving intentional torts committed by an employee, this Court has emphasized that where an employee's actions are personal, or where they represent a departure from the purpose of furthering the employer's business, or where the employee is acting to protect his own interests, even if during normal duty hours and at an authorized locality, the employee's actions are outside the scope of his employment.

> Finally, "[w]here the <u>conduct of the servant is unprovoked, highly unusual, and quite outrageous</u>," courts tend to hold "that this in itself is sufficient to indicate that the <u>motive was a purely personal one</u>" and the conduct <u>outside the scope of employment</u>.

Sawyer v. Humphries, 587 A.2d 467, 471-72 (Md. 1991) (emphasis added) (citation omitted).

"Ordinarily, the question of whether an employee's conduct is within the scope of employment is one for the jury. The issue becomes a question of law, however, when there is no factual dispute." Tall, 706 A.2d at 668.

"While Maryland courts have not squarely addressed the narrow issue of whether an employer is vicariously liable for a sexual assault committed by its employee against a third party, it has discussed it in dicta." Thomas v. Bet Sound-Stage Rest./BrettCo, Inc., 61 F. Supp. 2d 448, 453 (D. Md. 1999).

In Tall v. Board of School Commissioners of Baltimore City, 706 A.2d 659, 661, 667 (Md. Ct. Spec. App. 1998), the Court of Special Appeals of Maryland held that the board of school commissioners was not vicariously liable for a teacher's act of beating a disabled child on the arms and legs after the child urinated in his pants because the teacher had not acted within the scope of his employment. The court stated that "[a]lthough we have not uncovered any Maryland cases dealing with the precise issues presented here, other jurisdictions that have

13

considered the scope of employment issue with respect to acts of assault or sexual child abuse committed by a teacher upon a student provide guidance." Id. at 670.

In reaching its ruling, the Tall court relied, in part, on two cases that involved a plaintiff's claims of vicarious liability of an employer for sexual assaults by an employee against a minor. See id. at 669-70. In Randi F. v. High Ridge YMCA, 524 N.E.2d 966, 971 (Ill. App. Ct. 1988), the Appellate Court of Illinois held that "the assault and sexual molestation of a three-year-old child by a teacher's aide at a day care center is a deviation from the scope of the employment having no relation to the business of the day care center or the furtherance thereof."

Similarly, in Boykin v. D.C., 484 A.2d 560, 561, 564 (D.C. 1984), the District of Columbia Court of Appeals held that the District of Columbia was not liable for the sexual assault of a 12-year-old blind and deaf public school student by the school's coordinator of the blind and deaf program because the acts fell outside the scope of the coordinator's employment. The court explained:

> The sexual attack by Boyd on Valerie was unprovoked. It certainly was not a direct outgrowth of Boyd's instructions or job assignment, nor was it an integral part of the school's activities, interests or objectives. Boyd's assault was in no degree committed to serve the school's interest,

14

> but rather appears to have been done solely for the accomplishment of Boyd's independent, malicious, mischievous and selfish purposes.

Id. at 562.

The Tall court stated that "[t]he decision of the Boykin court is consistent with decisions from other jurisdictions that have refused to hold employers liable under the doctrine of respondeat superior for sexual assaults upon children perpetrated by school employees."  See Tall, 706 A.2d at 670-71 (citing cases).

Based upon the reasoning of the Court of Special Appeals of Maryland in Tall, Judge Williams of this Court concluded in Thomas v. Bet Sound-Stage Rest./BrettCo, Inc., 61 F. Supp. 2d 448, 454 (D. Md. 1999):

> [A]bsent a decision by a Maryland court squarely addressing the issue before this Court, the prevailing law in Maryland must be applied in the manner that its courts would likely have ruled. . . . As such, the Court finds that an employer cannot be held vicariously liable for sexual assaults committed by its employees or one it may have given apparent authority.

See Green v. Wills Grp., Inc., 161 F. Supp. 2d 618, 626-27 (D. Md. 2001) ("[U]nder Maryland law, an employer is not vicariously liable for the torts of assault and battery based on sexual assaults by another employee as they are outside the scope of employment."); see also Samuels v. Two Farms, Inc., No. CIV.A.

DKC 10-2480, 2012 WL 261196, at *10 (D. Md. Jan. 27, 2012) ("Judges in this district have since applied the Tall court's reasoning [and] repeatedly held that, under Maryland law, an employer is not vicariously liable for torts arising from sexual harassment by another employee because those torts arose outside of the scope of employment." (citations omitted)).

Newmuis' conduct had no relation to the business of a youth sports organization. Nor was his conduct an integral part of the AAU's activities, interests, or objectives. See Boykin, 484 A.2d at 562. Rather, an alleged sexual assault of a student athlete by a coach appears to be "quite outrageous" conduct that indicates "the motive was a purely personal one." See Sawyer, 587 A.2d at 471-72.

The Court disagrees with McCoy that because Newmuis' responsibilities purportedly "involved significant hands on contact . . . [i]t was absolutely foreseeable that sexual, inappropriate contact would be made." [Document 76] at 8. The court in Boykin rejected a similar argument:

> Appellant Boykin would have us hold that the assault was a direct outgrowth of Boyd's assignment because that assignment necessarily included some physical contact . . . . The fact that physical touching was necessarily a part of the teacher-student relationship made it foreseeable that sexual assaults could occur, she argues. We reject this connection as too attenuated. We do not believe that a sexual assault may be deemed a direct outgrowth of a school official's

16

>           authorization to take a student by the hand
>           or arm in guiding her past obstacles in the
>           building.

484 A.2d at 562.

This Court finds the reasoning of the Court of Special Appeals of Maryland in <u>Tall</u> and of Judge Williams of this Court in <u>Thomas</u> persuasive and concludes that - even if McCoy were to establish an agency relationship between Newmuis and the AAU - the AAU would not be held vicariously liable for the alleged sexual assaults by Newmuis because such acts were not within the scope of a track coach's agency relationship with the AAU.[5]

Accordingly, the AAU is entitled to summary judgment on all claims asserted in the Amended Complaint.

---

[5] McCoy offers no support for his argument that because the AAU offers general liability coverage including "Sexual Abuse & Molestation," the AAU is liable to him for the abuse allegedly inflicted by Newmuis. <u>See</u> [Document 76] at 3. McCoy has not presented any evidence regarding the insurance policy upon which he bases this argument and/or whether he made a claim under that policy that was denied.

IV.  CONCLUSION

For the foregoing reasons[6]:

1. Defendant Amateur Athletic Union of the United States, Inc.'s Motion for Summary Judgment [Document 70] is GRANTED.

2. Judgment shall be entered by separate Order.

SO ORDERED, on Wednesday, January 21, 2015.

 

                                                                              /s/         
Marvin J. Garbis
United States District Judge

---

[6] Because the Court has decided that the AAU is entitled to summary judgment based upon the agency relationship and scope of employment issues, it need not, and does not, address the AAU's res judicata contentions.

18